IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

CHRISTOPHER W.,[1]

        Plaintiff,

vs.

ANDREW SAUL, Commissioner of
Social Security,

        Defendant.

Case No. 3:19-cv-00271-AA
**OPINION AND ORDER**

AIKEN, District Judge:

    Plaintiff Christopher W. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's claims for Disability Insurance Benefits and Supplemental Security Income. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). For the following reasons, the Commissioner's decision is AFFIRMED.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for the non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## BACKGROUND

Plaintiff protectively filed a Title II application for a period of disability and disability benefits on June 14, 2013, along with a Title XVI application for supplemental income the same day. Tr. 17. He alleged disability beginning March 1, 2013, due to several mental health and physical impairments. His claims were denied initially and again upon reconsideration. *Id.* Plaintiff requested, appeared, and testified at a hearing held on February 12, 2016. *Id.* The ALJ found that plaintiff was not disabled during the relevant time period and issued an unfavorable decision. Tr. 14–35. Plaintiff requested review from the Appeals Council, which denied his request. Tr. 13, 1. Plaintiff appealed to the United States District Court for the District of Oregon, which resulted in a stipulated remand for further proceedings. Tr. 928–46.

A new hearing was held on July 31, 2018, before a different ALJ. Tr. 862–89. The ALJ issued an unfavorable decision on September 21, 2018, finding plaintiff not disabled during the relevant time period. Tr. 837–61. The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 828.

## DISABILITY ANALYSIS

To be disabled within the meaning of the Social Security Act ("Act"), a claimant must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §

423(d)(1)(A). The Commissioner follows a "five-step sequential process for determining whether an applicant is disabled." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724–25.

The claimant bears the burden of proof at steps one through four, while the Commissioner bears the burden at step five. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001). At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); 20 C.F.R. § 404.1560(c). If the Commissioner meets this burden and proves that the claimant can perform other work that exists in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953–54. However, if the Commissioner does not meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## COMMISSIONER'S DECISION

Here, the ALJ performed the five-step analysis and noted that plaintiff met the insured status requirements of the Act through September 30, 2018. Tr. 842. At

step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. *Id*. At step two, the ALJ found that plaintiff suffered from a variety of severe impairments, including "major depressive disorder; generalized anxiety disorder; degenerative disc disease of the lumbar spine with stenosis; degenerative disc disease of the thoracic spine; diabetes mellitus; osteoarthritis of the right knee; and obesity (20 CFR 404.1520(c) and 416.920(c))." *Id*. At step three, the ALJ found that none of plaintiff's impairments met or medically equaled one of the listed impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 843.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). A plaintiff's RFC is the most the person can do, despite his physical or mental impairments. 20 C.F.R. §§ 404.1545, 416.945. In formulating the RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. *Id*. Here, the ALJ found that plaintiff retained the RFC to perform "light work as defined in 20 CFR 404.1567(b) and 416.967(b)." Tr. 845. However, the ALJ also found that plaintiff had additional limitations:

> [Plaintiff] can occasionally climb ramps and stairs, but never ropes, ladders or scaffolds; he can occasionally stoop, crouch, crawl, and kneel; he can do simple routine tasks with occasional public contact; he should avoid concentrated exposure to hazards and vibration; he should have an option to change positions between sitting and standing in 30-60 minute intervals or stand and stretch 2-3 minutes at these intervals.

*Id*.

At step four, the ALJ found that plaintiff was unable to perform any of his past relevant work as a food service manager and institutional cook. Tr. 853. Lastly, at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform. Tr. 854. The ALJ based this finding on the testimony of the vocational expert at plaintiff's hearing who testified that plaintiff would be able to perform occupations such as office helper, electronics worker, and small products assembler. *Id.* Accordingly, the ALJ concluded that plaintiff was not disabled under the Act. Tr. 855.

## STANDARD OF REVIEW

A reviewing court shall affirm the decision of the Commissioner if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). The district court must review the administrative record as a whole, weighing both the evidence that supports and detracts from the decision of the ALJ, to determine whether substantial evidence exists. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

If the evidence in the record is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). However, a reviewing court cannot

affirm the decision based on grounds that the agency did not invoke in making its decision. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). Lastly, a court may not reverse the decision due to a harmless error. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff argues that the ALJ erred by rejecting the treating source statements of his treating physician, Dr. Howard Grattan. Dr. Grattan is a Pain Medicine Specialist who treated plaintiff beginning in March 2014. He provided treating source statements in 2016 and 2018 regarding plaintiff's functional abilities and limitations related to his back pain.

In 2016, Dr. Grattan opined that plaintiff needs to alternate between sitting, standing, and/or lying down every 30 minutes; can occasionally and frequently lift 10 pounds; can stand or walk for 20 minutes at a time and less than two hours out of an eight-hour work day; can sit for 30 minutes at a time and more than six hours in an eight-hour work day; can never climb; can frequently balance, kneel, crouch and crawl; can occasionally stoop or bend, reach, handle, finger and feel; his attention and concentration would be impaired 10% of a normal workweek; and he would miss 16 or more hours of work per month due to his impairments. Tr. 825–27.

In 2018, Dr. Grattan opined that plaintiff's limitations had not changed since his 2016 opinion. He also responded to the reasons that the ALJ had provided in 2016 for rejecting his earlier opinion. The 2016 ALJ decision had reasoned that Dr.

Grattan's opined limitations were not consistent with plaintiff's daily activities, such as caring for his elderly mother and performing various household chores. Dr. Grattan responded that these activities would not require anything above his opined limitations and that these activities, if done carefully, would not require lifting more than 10 pounds. The ALJ had also reasoned that Dr. Grattan's opinion was inconsistent with treatment notes in the file showing plaintiff had full strength in his upper and lower extremities bilaterally and the examinations performed as part of plaintiff's long-term disability ("LTD") assessments. Dr. Grattan explained that pain limits tolerance, not strength, and therefore this finding was not inconsistent with his opinion. He also explained that the doctors who performed plaintiff's LTD assessments did not place enough weight on plaintiff's pain reports.

Social security law recognizes three types of medical sources: (1) treating, (2) examining, and (3) non-examining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). An ALJ must explicitly reject a medical opinion, or set forth specific, legitimate reasons for crediting one medical opinion over another. *Id.* Because Dr. Grattan is a treating source, his opinion would generally be entitled to more weight than those given by doctors who did not treat plaintiff. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). However, his opinion was contradicted by several other medical opinions, such as state agency medical consultant Dr. Neal Berner's opinion. Tr. 138–41. Consequently, Dr. Grattan's opinions were not entitled to controlling weight, and the ALJ could validly discount them by providing "specific and legitimate reasons" that were supported by substantial evidence in the record. *Ryan v. Comm'r of Soc. Sec.*,

528 F.3d 1194, 1198 (9th Cir. 2008). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [their] interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Here, the ALJ gave both Dr. Grattan's 2016 and 2018 opinions "little weight" for substantially the same reasons. Tr. 851. The ALJ reasoned that Dr. Grattan's opined limitations were inconsistent with (1) plaintiff's reported daily activities, (2) treatment notes, (3) results of objective examinations performed as part of plaintiff's LTD assessments, and (4) the record as a whole. *Id*.

First, the ALJ reasoned that Dr. Grattan's 2016 opinion was inconsistent with plaintiff's daily activities. The ALJ explained that plaintiff "reported that he is the primary caregiver of his ill elderly mother. The claimant also stated that he barbecued, prepared meals, vacuumed, picked up dishes, and cleaned counters." *Id*. Inconsistency between a treating provider's opinion and a claimant's activities may constitute a specific and legitimate reason to discount that opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).

Although the ALJ accurately summarized Dr. Grattan's opinions and plaintiff's reported daily activities, she failed to explain how they are in conflict. None of the reported activities necessarily require plaintiff to do anything above Dr. Grattan's opined limitations. Plaintiff could still alternate between standing, sitting, or lying down every 30 minutes; avoid lifting above 10 pounds and climbing; and stand/walk for no more than 20 minutes at a time, while barbequing, preparing

Page 8 – OPINION AND ORDER

meals, vacuuming, picking up dishes, or cleaning counters. Similarly, concerning caring for his elderly mother, plaintiff testified in 2018 that he helped his mother with her colostomy bag, kept track of her medications, pushed her in her wheelchair to the dinner table, brought out food, and kept her company. Tr. 876–77. None of these caretaking duties would have necessarily required plaintiff to do anything above Dr. Grattan's opined limitations.

Thus, although the ALJ invoked a specific and legitimate reason to reject Dr. Grattan's opinion, she failed to provide a "detailed and thorough summary of the facts and conflicting evidence" or explain her interpretation of those facts and evidence. *Magallanes*, 881 F.2d at 751. Additionally, "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. The ALJ failed to explain which of plaintiff's activities conflicted with which of Dr. Grattan's limitations. Accordingly, the ALJ's findings regarding inconsistencies between Dr. Grattan's opinions and plaintiff's daily activities are not sufficiently particularized nor supported by substantial evidence.

Second, the ALJ reasoned that Dr. Grattan's opinions were inconsistent with treatment notes in the record. "A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a

treating physician or another treating provider." *Ghanim*, 763 F.3d at 1161 (citing *Molina v. Astrue*, 674 F.3d 1104, 1111–12 (9th Cir. 2012)).

The ALJ found that Dr. Grattan's 2016 opinion was inconsistent with treatment notes in the file that found plaintiff had full strength in his upper and lower extremities bilaterally. Tr. 851. However, Dr. Grattan's 2018 opinion explained that pain limits tolerance, not strength, and therefore those findings in prior treatment notes do not actually conflict with his proffered limitations. Tr. 1716. The ALJ made no attempt to discuss this explanation. "The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities." *Vazquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Andrews*, 53 F.3d at 1039). Because the ALJ failed to resolve the conflict between prior treatment notes finding full strength and Dr. Grattan's 2018 opinion's reasoning that pain limits tolerance, not strength, the ALJ did not adequately perform her responsibilities when discounting his opinions simply due to plaintiff's strength.

The ALJ also found that Dr. Grattan's 2018 opinion was inconsistent with treatment notes in the file. As an example, the ALJ cited notes from one of plaintiff's most recent examinations, stating:

> [O]n exam in March 2018, he ambulated with forward tilt around the room and transferred to and from the table without difficulties. There was slight tenderness to palpation in the medial and lateral joint lines in the knees but range of motion was intact. There was slight crepitus but no laxity. Back flexion, lateral bending and extension were limited but there was no evidence of instability or laxity. Straight leg raise was negative. Range of motion of the lower extremities was normal and he had 5/5 strength. There was no evidence of instability or laxity. He exhibited no depression, anxiety or agitation. Memory was intact.

Page 10 – OPINION AND ORDER

Tr. 851. These findings supply more reasons to discount Dr. Grattan's opinion than simply plaintiff's strength, such as normal gait, range of motion and lack of instability. The findings are also consistent with most of the treatment notes in the file where, between 2013 and 2018, plaintiff is repeatedly noted to ambulate freely around the room and transfer to and from the table without difficulties. Tr. 1499, 1508, 1525, 1532, 1539, 1547, 1585, 1669, 1710, 548, 458, 462. In either examining plaintiff or reviewing the medical records, including those same treatment notes, four other physicians determined that plaintiff had significantly less limitations than Dr. Grattan opined. Tr. 131–41, 458, 462, 729–36, 743–44, 759–62. When the evidence examined by the ALJ is subject to more than one rational interpretation, the Court must defer to the ALJ's conclusion. *Andrews*, 53 F.3d at 1041. Because plaintiff's treatment notes consistently report little to no abnormalities in plaintiff's movement upon examination and other physicians' interpretations of those notes contradicted Dr. Grattan's, it was not unreasonable to conclude that plaintiff is not limited to the extent opined by Dr. Grattan. Therefore, the ALJ's decision to reject Dr. Grattan's opinions because they are inconsistent with treatment notes in the file is supported by substantial evidence.

Third, the ALJ reasoned that Dr. Grattan's opinions were inconsistent with the examinations performed as part of plaintiff's LTD assessments. The LTD assessments were completed in 2013, 2014, and 2015, and the examinations related to plaintiff's back pain show the same normal musculoskeletal and movement findings as the more recent treatment records in examinations dating back to 2011.

Tr. 730–34. Because the examinations performed as part of plaintiff's LTD assessments report no movement abnormalities and are consistent with later treatment notes, the ALJ reasonably concluded that Dr. Grattan's opined limitations were inconsistent with those examinations. Thus, the ALJ's conclusion is supported by substantial evidence.

Finally, the ALJ stated that "the record as a whole does not support the severity of the doctor's opinions." Tr. 851. The ALJ made this statement at the end of a paragraph, did not cite any records, and did not provide further explanation. "[T]he consistency of the medical opinion with the record as a whole" is a relevant factor in evaluating medical opinions. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); *see also* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). However, "even when the objective factors are listed seriatim," the ALJ cannot merely state in a conclusory fashion that a doctor's opinion is inconsistent with objective factors in the record as a whole. *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988). To the extent that the ALJ's decision relies on this statement as an independent reason to reject Dr. Grattan's 2016 and 2018 opinions, the Court cannot affirm on these grounds

In sum, the ALJ erred by failing to explain which of plaintiff's reported daily activities conflicted with which of Dr. Grattan's opined limitations, resolve the conflict between plaintiff's full strength and Dr. Grattan's explanation that pain limits tolerance, not strength, and provide particularized reasoning when concluding that Dr. Grattan's opinions were inconsistent with the record as a whole. Nevertheless, those errors were harmless because the ALJ validly rejected Dr.

Page 12 – OPINION AND ORDER

Grattan's opinions for inconsistency with treatment notes and examinations performed as part of plaintiff's LTD assessments. *Batson*, 359 F.3d at 1197 (explaining that even if not all of the ALJ's findings are upheld, the overall decision may still be upheld if the ALJ provided other valid rationales). Therefore, the ALJ's decision is supported by substantial evidence in the record and free from harmful legal error.

## CONCLUSION

For the reasons above, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

Dated this  20th  day of July 2020.


                /s/Ann Aiken

                Ann Aiken
        United States District Judge